Robert BARTH, Appellant–Plaintiff,

v.

Michael BARTH, Jr., and Barth Electric Co., Inc., Appellees–Defendants.

No. 49A05–9701–CV–13.

Court of Appeals of Indiana.

March 23, 1998.

Charles E. Johnson, Frank M. Maley, Indianapolis, for Appellant–Plaintiff.

David C. Campbell, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for Appellees–Defendants.

## OPINION

BARTEAU, Judge.

Robert Barth (Robert) appeals the dismissal, on remand, of his complaint against Michael Barth (Michael) and Barth Electric Company (collectively, the Corporation) for breach of fiduciary duty and fraud. He raises three issues, which we consolidate and restate as:

> Whether the trial court properly dismissed a complaint by a shareholder against a closely held corporation and its majority shareholder when the shareholder alleged misuse of corporate assets and brought the complaint as a direct, and not derivative, action?

We affirm.

### FACTS

The course of this litigation was summarized by our supreme court in *Barth v. Barth,* 659 N.E.2d 559 (Ind.1995) (*Barth II* ):

> This lawsuit was brought against defendants Barth Electric Co., Inc., and its president and majority shareholder. Michael G. Barth, Jr., by plaintiff minority shareholder Robert Barth individually (rather than derivatively on behalf of the corporation). Plaintiff Robert Barth alleged that defendant Michael Barth had taken certain actions which had the effect of "substantially reducing the value of Plaintiff's shares of common stock" in the corporation. Specifically, plaintiff contended that defendant Michael Barth had: (1) paid excessive salaries to himself and to members of his immediate family; (2) used corporate employees to perform services on his and his son's homes without compensating the corporation; (3) dramatically lowered dividend payments; and (4) appropriated corporate funds for personal investments. *Barth v. Barth* (1995), Ind. App., 651 N.E.2d 291 [*Barth I* ]. Michael Barth and the corporation moved to dismiss Robert Barth's complaint for the failure to state a claim upon which relief can be granted, Ind.Trial Rule 12(B)(6), arguing that a derivative action was required to redress claims of this nature. The trial court granted the motion to dismiss. The

Court of Appeals acknowledged that the "well-established general rule" prohibits a shareholder from maintaining an action in the shareholder's own name but found that requiring a derivative action here would "exalt form over substance" since Robert Barth could have satisfied the requirements for bringing a derivative action and that none of the reasons underlying the general derivative action requirement were present. *Barth v. Barth*, 651 N.E.2d at 293. The Court of Appeals reversed the trial court; the corporation and Michael Barth seek transfer.

*Id.* at 560 (footnotes omitted).

On transfer, our supreme court adopted as the applicable rule § 7.01(d) of the American Law Institute's Principles of Corporate Governance (the "A.L.I. Rule"). It vacated our decision and remanded the case to the trial court for a reconsideration of the dismissal order in light of that rule. On remand, the trial court again dismissed Robert's complaint.

### NON–COMPLIANCE WITH APPELLATE RULES

■ We must address initially the numerous violations of our rules by Robert's counsel.[1] We first note that the Statement of Facts in Robert's brief is devoid of references to the record, in violation of Indiana Appellate Rule 8.3(A)(5). We remind counsel that we are unwilling to sift through a record to locate error so as to state an appellant's case for him. *Nehi Beverage Co., Inc. v. Petri*, 537 N.E.2d 78, 81 (Ind.Ct.App.1989).

Counsel's Statement of the Facts is also rife with argument, which is inappropriate in that part of an appellate brief. A Statement of Facts should be a concise narrative of the facts stated in a light most favorable to the judgment, and should not be argumentative. *Id.* at 82. The Statement of Facts Robert's counsel offers us is, by contrast, a transparent attempt to discredit the judgment, and it is clearly not intended to be a vehicle for informing this court. For example, counsel offers as "facts" such legal conclusions and

argumentative statements as "Michael controls all corporate meetings in such a manner making said meetings a sham," Appellant's Brief at 7, "Michael terminated Robert's employment without cause," *id.*, and "Michael has used the money of Barth for personal investments for his own benefit to the detriment of Robert's shares in Barth," *id.* at 8.

Robert's counsel's Statement of the Case is also defective. Most notably, it does not include a verbatim statement of the trial court's judgment as required by Appellate Rule 8.3(A)(4). Rather, it represents, as a statement of the trial court's five page judgment, a single paragraph which quotes various parts of the court's judgment but eliminates most of the judgment. Robert's counsel nowhere acknowledges that he altered or edited the trial judgment.

Finally, we note that on those occasions in his argument section where Robert's counsel refers us to legal authority as support for his arguments, counsel does not favor us with pinpoint citations to help us determine where, within a decision, support for his contentions may be found, or even whether support can be found in that decision at all. In fact, there is but a single pinpoint citation to be found in counsel's argument section, and that one pinpoint citation is included in a quotation from a decision for which no pinpoint citation is provided.

We direct Robert's counsel to Appellate Rule 8.2(B)(1), which states that citations to cases in briefs should follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). When referring to specific material within a source, a citation should include both the page on which the source begins and the page on which the specific material appears. Uniform System of Citation Rule 3.3 (16th ed.1996). As noted above, we will not, on review, sift through the record to find a basis for a party's argument. Nor will we search through the authorities cited by a party in order to try to find legal support for its position.

---

1. Michael filed a Motion To Strike based on defects in parts of Robert's Reply Brief. Because

we find in Michael's favor, we need not rule on his Motion To Strike.

■ We will consider assertions of error to be waived where an appellant's noncompliance with our rules is so substantial that it impedes our consideration of them, *Nehi*, 537 N.E.2d at 81, and counsel for Robert has so impeded our consideration by his numerous violations of our rules. However, we choose to address the merits of this case in the hope of advancing the resolution of this long-standing dispute.

### STANDARD OF REVIEW

■ The rule adopted by our supreme court in *Barth II* determines when, in an action involving a closely held corporation, "the court *in its discretion* may treat an action raising derivative claims as a direct action ..." A.L.I., *Principles of Corporate Governance* § 7.01(d) (emphasis supplied). So, we review the trial court's dismissal of Robert's complaint under an abuse of discretion standard, and we will not reverse the trial court's judgment unless it is clearly against the logic and effect of the facts and circumstances before the trial court. *See, e.g., North Texas Steel Co. v. R.R. Donnelley and Sons, Inc.*, 679 N.E.2d 513, 521 (Ind.Ct. App.1997), *reh'g denied, transfer denied* (addressing the abuse of discretion standard for a trial court's decision whether to grant a change of venue motion). We will affirm the trial court if there is any rational basis for its decision. *In re Trust of Loeb*, 492 N.E.2d 40, 45 (Ind.Ct.App.1986).

### DISCUSSION AND DECISION

In *Barth II*, our supreme court noted the "well-established general rule" that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation, even if the injury has the effect of impairing the value of their stock. 659 N.E.2d at 560. Relying upon our decisions in *Moll v. South Central Solar Systems*, 419 N.E.2d 154, 161 (Ind.Ct. App.1981) and *W & W Equipment Co. v.*

*Mink*, 568 N.E.2d 564, 571 (Ind.Ct.App.1991), it explained the rationale behind the rule:

> The rationale supporting this rule is based on sound public policy considerations. It is recognized that authorization of shareholder actions in such cases would constitute authorization of multitudinous litigation and disregard for the corporate entity. Sound policy considerations have been said to require that a single action be brought rather than to permit separate suits by each shareholder even when the corporation and the shareholder are the same. [Other reasons for the rule are] the protection of corporate creditors by putting the proceeds of the recovery back in the corporation; the protection of the interests of all the shareholders rather than allowing one shareholder to prejudice the interests of other shareholders; and the adequate compensation of the injured shareholder by increasing the value of the shares when recovery is put back into the corporation. While we affirm the general rule requiring a shareholder to bring a derivative rather than direct action when seeking redress for injury to the corporation, we nevertheless observe two reasons why this rule will not always apply in the case of closely-held corporations. First, shareholders in a close corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow shareholders. Second, shareholder litigation in the closely-held corporation context will often not implicate the policies that mandate requiring derivative litigation when more widely-held corporations are involved.

659 N.E.2d at 561 (citations omitted). The *Barth II* court adopted the A.L.I. Rule for determining when a shareholder of a closely held corporation may raise a derivative claim[2] in a direct action rather than a derivative action:

> noted an exception to that general rule when there is a breach of duty owed to a shareholder separate and distinct from the duty owed to the corporation. However, the court found Robert was making no such claim. 659 N.E.2d at 561 n. 4. Rather, it instructed the trial court, on remand, to reconsider its dismissal of Robert's

---

**2.** In much of his brief, Robert appears to be arguing that Michael breached his fiduciary duty toward Robert individually; thus, his claim is not "derivative," and is outside the general rule that a shareholder may not maintain a direct action in his or her own name to redress an injury to the corporation. In *Barth II*, our supreme court

In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a. fair distribution of the recovery among all interested persons.

A.L.I., *Principles of Corporate Governance* § 7.01(d).

### *Multiple Actions*

■ The trial court noted that the Corporation has three shareholders, one of which is not a party to Robert's action and would not be bound by any judgment in the action. The trial court found that allowing Robert to proceed in a direct, rather than a derivative, action could expose Michael and the Corporation to a claim by the third shareholder arising from the same matters alleged in Robert's complaint.

The general rule that a shareholder may not maintain a direct action against his or her corporation is supported by the policy concern that a single derivative action is preferable to separate suits by each shareholder. So, in *Mink*, we found that the policy considerations favoring a derivative action were not present when there were only two shareholders.[3] There was no potential for a multiplicity of shareholder suits; there could be no prejudice to other shareholders since there was only one injured shareholder; and there was only one shareholder who could bring the action on behalf of the corporation. 568 N.E.2d at 571.

Here, by contrast, there is a third shareholder who has not been joined in Robert's

action and who has not intervened in the action. The existence of a third shareholder gives rise to the potential for multiple lawsuits if the third shareholder is not bound by Robert's action, or to prejudice to the third shareholder if she is so bound. We cannot say that the trial court abused its discretion when it determined that allowing Robert to pursue a direct action could unfairly expose the corporation to a multiplicity of actions as contemplated by the first of the factors in the A.L.I. rule.

### *Prejudice to Creditors*

The trial court found that there was no basis upon which it could determine whether creditors of the corporation would be prejudiced if Robert was allowed to pursue a direct claim. Robert does not address this factor except to make the bald assertion that "[o]ne of the reasons the Appellant asked for corporate dissolution and/or receivership relief was to make certain that creditors and shareholders would be treated fairly and evenly." Appellant's Brief at 18. It seems apparent that the interests of creditors are at least potentially prejudiced by the dissolution of a corporation which might otherwise continue in existence.

We also note that Robert's complaint asks that damages be paid to him, and not to creditors, by the corporation. R. at 83–84. That result would be inherently prejudicial to creditors of the corporation should the corporation be dissolved as a result of the lawsuit. Our supreme court noted in *Barth II* that "because a corporate recovery in a derivative action will benefit creditors while a direct recovery by a shareholder will not, the protection of creditors principle could well be implicated in a shareholder suit against a closely-held corporation with debt." 659 N.E.2d at 562. Robert's direct action would circumvent the rights of creditors to the

---

claim in light of the A.L.I. Rule which governs derivative claims, and we limit our review accordingly.

**3.** Robert's counsel attempts to distinguish *Mink* by citing to our opinion in *Barth I*, which our supreme court vacated in *Barth II*. Counsel makes the remarkable assertion that "It is well to state at this point that the vacation by the Su-

preme Court of the Court of Appeals decision in this case does not cast doubt on the validity of the opinion." Appellant's Brief at 17. We remind Robert's counsel that when the supreme court grants transfer, the appeals court decision is "vacated and held for naught," App.R. 11(B)(3), and has no precedential value. *Meyer v. Biedron*, 667 N.E.2d 752, 753 (Ind.1996).

extent that the damages awarded inured solely to him, and not to the corporation. We cannot say that the trial court abused its discretion when it determined that the second factor of the A.L.I. rule did not support avoidance of the general rule requiring Robert's action to be brought derivatively.

### *Fair Distribution of Recovery*

Finally, the trial court found that the third shareholder, who was not a party to Robert's action, would not share in the damages Robert seeks from Michael and the corporation in a direct action. That result, the court found, would constitute an unfair distribution of the assets of the corporation to only one of its shareholders. We agree that any recovery to Robert individually would necessarily endanger the non-party shareholder's right to a fair recovery for any wrongs done to the corporation, which fair recovery would be assured in a derivative action. The trial court did not abuse its discretion when it determined that the third A.L.I. factor did not mitigate in favor of a direct action.

### *CONCLUSION*

Permitting Robert to pursue a direct, rather than derivative action would unfairly expose the Corporation to multiple actions; it would prejudice the interests of the Corporation's creditors; and it would interfere with a fair distribution of the recovery among the shareholders. The trial court did not abuse its discretion in dismissing Robert's complaint.

RUCKER and STATON, JJ., concur.